UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MOHAMMED SALAMI,

  Plaintiff,

v.

GATEWAY FOUNDATION, INC.,
ROGERS, HUNT, GWENDOLYN
WARREN, WEBSTER, MYRIECKS,
DANIELLE, SARAH VALADE,
HEATHER STEVENS, DIANE
FRESHCORN, MICHAEL EAGEN,
ANTHONY KING, and HEIDI
WASHINGTON,

  Defendants.
_____/

Case No. 2:19-cv-11683
District Judge George Caram Steeh
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT (ECF Nos. 88, 90)

I.  Introduction

This is a *pro se* prisoner/parolee civil rights case brought under 42 U.S.C. §

1983 and the Religious Land Use and Institutionalized Persons Act of 2000

(RLUIPA), 42 U.S.C.A. § 2000cc-1, *et seq.*  Plaintiff Michael Mohammed Salami,

is suing defendants for requiring her to attend Alcoholics Anonymous (AA) classes

1

as a condition of her parole.[1]  (ECF No. 83).  Under 28 U.S.C. § 636(b)(1), all

pretrial matters were referred to the undersigned.  (ECF No. 87).  Defendants

Gateway Foundation, Inc., Warren, Webster, Daniellis, and Myriecks ("the

Gateway Defendants") have filed a motion to dismiss, (ECF No. 90), and Michigan

Department of Corrections defendants Heather Stevens, Sarah Valade, and Heidi

Washington ("the MDOC Defendants") have filed a renewed motion to dismiss

and for summary judgment (ECF No. 88).  The Court has ordered Salami to

respond to each motion twice, (ECF Nos. 91, 95), but she has failed to do so.  As

noted in the latter order, the Court will consider both motions without responses.

Having done so, the undersigned recommends that the motions be GRANTED and

this case be dismissed.

## II.  Background

### A. Procedural History

Salami originally brought suit against on June 6, 2019, regarding the

conditions of her confinement at the Carson City Correctional Facility.  (ECF No.

1).  She has since amended the complaint on two occasions, (ECF Nos. 12, 18),

both of which were accepted by the Court in turn.  (ECF Nos. 17, 33).  On August

---

[1] In a separate lawsuit pending in this district, *Salami v. Trombley, 19-11558*,
Salami asserts that she has gender dysphoria and identifies as female, and has
begun using feminine pronouns in this matter as well.  The Court therefore uses the
pronouns "she" and "her" when referring to Salami.

6, 2020, Magistrate Judge R. Steven Whalen, to whom the case was previously referred, issued a Report and Recommendation on a motion by some defendants for a more definite statement. (ECF No. 80). Recognizing that the parties including Salami agreed that the operative complaint unspecific, vague, and partly illegible, Magistrate Judge Whalen recommended that the motion be granted. (*Id*.). The same day, the Magistrate Judge Whalen granted Salami's motion for leave to file another amended complaint, but noted that her filing which merely described how she intended to amend the operative complaint was not valid. (ECF No. 79). Thus, she was ordered to file a new amended complaint that must contain all of the claims with which she intended to proceed. (*Id*., PageID.318). Salami was instructed that her claims going forward would be limited to those set forth in this amended complaint. (*Id*.).

On September 2, 2020, Salami filed a one-page "more definite statement," with no other filings since that purport to be an amended complaint. (ECF No. 83). Later, in recommending denial of Salami's motions for preliminary injunctions, Magistrate Judge Whalen stated that the "more definite statement" functions as the operative complaint in this matter, and that Salami's "previous complaints, including ones containing more factual detail, cannot be cobbled together to support her claims." (ECF No. 86, PageID.338). This recommendation was later adopted. *See* ECF No. 89. Thus, the Court is limited to consideration of Salami's

latest filing in its recommendation, i.e., the operative complaint is Salami's "more definite statement" found at ECF No. 83.[2]

## B. Factual Background

Salami alleges that in May 2018, she was ordered by defendant Michael C. Eagen to participate in activities in which the Gateway Defendants forced her to attend AA and say "religious propaganda." Her parole eligibility was conditioned on participation, which was enforced by her parole agent, defendant Hunt, and defendant Sarah Valade. Defendant Warren and "other staff" are also implicated for instructing Salami to participate and refusing to offer an alternative to the religious-based programming. (ECF No. 83). Salami contends that she was not required to grieve this issue, as the Gateway Defendants are contractors and Parole Board orders are exempt from grievances. She requests punitive damages, declaratory judgment, and injunctive relief. (*Id*.).

## III.  Legal Standards

The Gateway Defendants and the MDOC Defendants move to dismiss under Rule 12(b)(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most

---

[2] The MDOC Defendants have based their arguments on a prior pleading, Salami's amended complaint at ECF No. 18, but their arguments can be sufficiently applied to the operative complaint. The Gateway Defendants have correctly construed Salami's more definite statement at ECF No. 83 as the operative complaint. *See* ECF No. 90, PageID.424.

favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented ... nor may courts construct the Plaintiff's legal

arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' "

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

The MDOC Defendants also move for summary judgment under Rule 56.

Under that Rule, "[t]he court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might

affect the outcome of the case under governing law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any

inferences that may be drawn from the facts in the light most favorable to the

nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132,

135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists...." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing

that if a party "fails to properly address another party's assertion of fact," the court

may "consider the fact undisputed for purposes of the motion"). "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must ... do more than simply show that there is some metaphysical doubt as to the material facts[.] ... [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). "Such evidence submitted in opposition to a motion for summary judgment must be admissible." *Alexander*, 576 F.3d at 558 (internal quotation marks and citations omitted). In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.] ..." *Stansberry*, 651 F.3d at 486 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Salami is *pro se* does not reduce her obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage,

... 'the liberal pleading standards under *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (*quoting Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

## IV.  Analysis

### A.  Salami's Failure to Respond

As an initial matter, Salami has failed to file responses to either of the present motions despite being afforded two additional chances to do so by the Court. Thus, the motions are unopposed.

As to the motions to dismiss, the law in this Circuit is not clear on whether a failure to respond to such a motion constitutes a sufficient ground for granting the motion. In *Carver v. Bunch*, 946 F.2d 451, 453-54 (6th Cir. 1991), the Sixth Circuit held that it is an abuse of discretion for a district court to dismiss under

8

Fed. R. Civ. P. 12(b)(6) solely because the plaintiff failed to respond to a motion to dismiss unless the failure rises to the level of a failure to prosecute.  The Sixth Circuit has also held that a failure to respond to a motion to dismiss will be grounds for granting the motion.  *See Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, *2 (6th Cir.1989) (unpublished table decision) (affirming district court's grant of defendants' unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (internal citations and quotations omitted).

As to a motion for summary judgment, "[e]ven when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380-81 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." (quoting *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991))).  Nonetheless, when a

motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). "The court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir. 2000).

Although Salami's failure to respond could be considered a failure to prosecute sufficient to grant defendants' motions to dismiss, the undersigned will consider the arguments in favor of dismissal. As will be explained, Salami has responded to some of the defendants' arguments in prior filings. Likewise, the undersigned will consider the merits of the MDOC Defendants' summary judgment motion.

### B.  Exhaustion

#### 1.  General

The MDOC Defendants move for summary judgment in part based on Salami's failure to exhaust her administrative remedies by not filing grievances regarding her claims. The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*,

10

548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies

"means using all steps that the agency holds out, and doing so *properly* (so that the

agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90,

93 (emphasis in original).  Requiring exhaustion allows prison officials an

opportunity to resolve disputes concerning the exercise of their responsibilities

before being haled into court and produces a useful administrative record.  *Jones v.

Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what

"proper exhaustion" entails because "it is the prison's requirements, and not the

PLRA, that define the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218.

"[A]n inmate is required to exhaust those, but only those, grievance

procedures that are 'capable of use' to obtain 'some relief for the action

complained of.' "  *Ross v. Blake*, ––– U.S. ––––, 136 S. Ct. 1850, 1859, 195 L.Ed.2d

117 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  "The Supreme

Court has identified three circumstances in which an administrative process is

rendered 'unavailable': first, when prison 'officers [are] unable or consistently

unwilling to provide any relief'; second, when a process is 'so opaque' that it is

'incapable of use'; or third, when prison officers 'thwart inmates from taking

advantage of a grievance process.' "  *Ratliff v. Graves*, 761 F. App'x 565, 567 (6th

Cir. 2019) (quoting *Ross*, 136 S. Ct. at 1859-60).

The MDOC Defendants have provided a document outlining the grievance procedure in place at the time of the allegations.  *See* ECF No. 88-2.  It states that a potential grievant should first attempt to resolve any issue informally with the staff member involved within two business days after becoming aware of the issue.  If the grievant feels that their complaint has not been resolved, they may then file a prisoner/parolee grievance form, which must be filed within five days of the attempt to resolve.  (ECF No. 88-2).

## 2.  Application

The MDOC Defendants have attached Salami's grievance record to their motion.  *See* ECF No. 88-3.  Notably, although Salami has made several grievances, none of them relate to the complaints that remain in this case.[3] However, in her "more definite statement" Salami contends that grievances regarding Parole Board orders are exempt under MDOC Policy Directive 03.02.130(F)(3),[4] which states that "[d]ecisions made by the Parole Board to grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a

---

[3] In a prior filing, a "Motion to Strike defendant Washington's 'failure to exhaust' claims, that was entered in March 2020 but not docketed until December 2020, Salami contends that she has exhausted available administrative remedies as to defendant Heidi Washington (ECF No. 92).  However, the allegedly exhausted claim is not present in the operative complaint that was later filed (ECF No. 83). In fact, no claims against Washington are present in the latest complaint, and the Court recommends dismissal against her for that reason, as outlined below.
[4] Salami actually cites 03.02.130(J)(10), which presently covers such grievances, but was not the applicable regulation at the time of the alleged occurrences.

public hearing" are non-grievable.  (ECF No. 88-2, PageID.375-376.)  As the MDOC Defendants note, Salami previously argued that as a parolee she was not subject to the grievance requirements for prisoners.  This argument lacks merit, as it is well-established that the regulations apply to prisoner/parolees.  *Coleman v. Washington*, No. 2:18-CV-13171, 2020 WL 6389832, at *7 (E.D. Mich. June 11, 2020), *report and recommendation adopted,* No. 18-13171, 2020 WL 4932110 (E.D. Mich. Aug. 24, 2020).  Salami's prior reliance on *Marr v. Booker*, No. 2:13-CV-13668, 2014 WL 2883458, *report and recommendation adopted in part*, No. 13-13668, 2014 WL 2883466 (E.D. Mich. June 25, 2014) in a previous amended complaint (ECF No. 18, PageID.47) is misguided, as that case related to a parolee's *in forma pauperis* status.  However, the MDOC Defendants fail to address Salami's more recent contention in her "more definite statement" that parole conditions are not grievable.  Nevertheless, Salami's argument does not carry the day.

Directive 03.02.130(F)(3) does exempt some Parole Board decisions from being grievable, but these are limited to decisions to "grant, deny, rescind, amend or revoke parole, or not to proceed with a lifer interview or a public hearing." (ECF No. 88-2, PageID.376).  On its face, the operative complaint does not state that Salami was denied parole, or that her parole was rescinded, amended, or revoked; it merely states that she was ordered to attend AA meetings as a condition

of parole.  (ECF No. 83).  Just as a parolee is a prisoner for the purposes of 42

U.S.C. § 1997e(a)'s exhaustion requirement, the conditions of parole, like the

conditions of prison, must be fully grieved before suit is brought.  The plain text of

Directive 03.02.130(F)(3) does not apply to Salami's complaint.  *See Veeder v.*

*Tri-Cap*, No. 17-CV-11690, 2018 WL 7254610, at \*6 (E.D. Mich. Dec. 13, 2018)

("Plaintiff's complaints [regarding parole conditions] were likely grievable and

thus he needed to exhaust them.").[5]  Thus, Salami's claims against all of the

MDOC Defendants should be dismissed for failure to exhaust administrative

remedies.[6]

### C.  § 1983 Claims

The Court next considers Salami's claims against the Gateway Defendants,

who contend that she has failed to state a claim under either § 1983 or RLUIPA.

### 1.  General

---

[5] In *Veeder*, the court went on to note that the conditions of parole were listed as "not grievable" in a guidebook that was provided to the plaintiff, thus exempting his claims.  *Id*.  Those circumstances are not present here.

[6] As noted in some cases, a challenge to certain conditions of parole might more properly be considered as a petition for habeas corpus.  *See Soldan v. Robinson*, No. 19-11334, 2020 WL 5997309, at \*4 (E.D. Mich. July 9, 2020), *report and recommendation adopted,* No. 19-11334, 2020 WL 5993224 (E.D. Mich. Oct. 9, 2020); *Hurst v. Pribe*, No. 2:14-CV-2552, 2014 WL 7015184, at \*3 (S.D. Ohio Dec. 11, 2014), *report and recommendation adopted,* No. 2:14-CV-2552, 2016 WL 1444241 (S.D. Ohio Apr. 13, 2016).  If so, Salami's claims would also be properly dismissed for a failure to allege the exhaustion of state remedies.  *Hurst*, at \*3-4.

42 U.S.C. § 1983 "imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Id*.

"Under § 1983, there is no *respondeat superior* or vicarious liability." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). "When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Id*. "To prove acquiescence, it is not enough to show that the actor merely failed to act against misconduct of which he was aware." *Id*.

2.  Application

Salami acknowledges in the "more definite statement" that the Gateway Defendants are not state employees, but were contracted to provide "rehab services" to parolees.  (ECF No. 83).  In order to establish liability under § 1983,

15

Salami must show that the Gateway Defendants' actions were nevertheless state actions.

> A private party's actions constitute state action under section 1983 where those actions may be fairly attributable to the state.  The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.

*Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (internal citations and quotations omitted).  These tests offer Salami no recourse for the actions of the Gateway Defendants.  Under the public function test, a private party is deemed a state actor if he or she exercised powers "traditionally reserved exclusively to the state."  *Id*.  This test is "interpreted narrowly" and limited to specific functions such as holding elections, exercising eminent domain, or operating a company-owned town.  *Id*. (citations omitted).  Functions such as substance abuse counseling "cannot plausibly be deemed an exclusive state function."  *Roberts v. Paige*, No. 10-CV-13743, 2013 WL 5435201, at *6 (E.D. Mich. Sept. 27, 2013).  Thus, the services provided by Gateway Defendants do not satisfy the public function test.

"The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."  *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).  For the activities of a private actor to

constitute state action under this test, more is required than merely the approval or acquiescence of the state in the decisions or actions of the private actor.  *Blum v. Yaretsky*, 4557 U.S. 991, 1004 (1982).  Though Salami has alleged a contract between Gateway and the MDOC, there are no further allegations as would be necessary to establish compulsion of the state over the Gateway Defendants.  In *Wolotsky*, even where the state provided a significant portion of funding to the contractor, there was no coercive power or encouragement from the state regarding the contractor's actions, and thus the state compulsion test was not satisfied.  960 F.2d at 1335.

Finally, "[u]nder the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman*, 319 F.3d at 834.  Here, there is again only the existence of a contract between Gateway and the MDOC to suggest the existence of a nexus or symbiotic relationship between the entities.  This is not enough.  "The mere existence of a contract between a governmental agency and a private party is insufficient to create state action." *Simescu v. Emmet Cty. Dep't of Soc. Servs.*, 942 F.2d 372, 375 (6th Cir. 1991).  This is true even where an entity generates all of its income from such services to the state.  *Roberts*, 2013 WL 5435201, at *7 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).  The Gateway

17

Defendants cite numerous cases from this district in which residential substance abuse treatment programs like Gateway are found not to be liable under § 1983 because they are not state actors.[7]  This Court finds no reason to diverge from that authority here, and thus recommends that the § 1983 claims against the Gateway Defendants be dismissed.

As for the MDOC Defendants, the operative complaint contains no allegations against defendants Heather Stevens or Heidi Washington, and the Court recommends their dismissal for that reason.  Regarding defendant Sarah Valade, the operative complaint does contain an arguably actionable claim against her that differs from the prior claim addressed by the MDOC Defendants.  However, this claim should still be dismissed because, as noted above, it was not first exhausted at the administrative level.  The same is true with regards to defendants Eagen and Hunt, who should be dismissed by the Court *sua sponte* for Salami's failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).[8]

---

[7] See *Roberts*; *Gebreneguesse v. Heyns*, 2017 WL 3405169, at *2 (E.D. Mich. Aug. 9, 2017); *Blair v. Michigan Dep't of Corr.*, 2012 WL 5511763, at *2 (E.D. Mich. Nov. 14, 2012); *Bagwell v. Community Programs, Inc.*, 2011 WL 1447543, at *1 (E.D. Mich. Apr. 13, 2011).

[8] *Sua sponte* dismissal is recommended because it does not appear that defendants Eagen and Hunt have been served.  "[A] court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust."  *Mattox v. Edelman*, 851 F.3d 583, 589 n.3 (6th Cir. 2017) (quoting *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)).

### D. RLUIPA

#### 1. General

Under RLUIPA, a government may not impose "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless it can show that the burden furthers "a compelling governmental interest" and "is the least restrictive means" of doing so.  42 U.S.C. § 2000cc-1(a).

> That makes the statute a three-act play.  In Act One, the inmate must demonstrate that he seeks to exercise religion out of a sincerely held religious belief.  In Act Two, he must show that the government substantially burdened that religious exercise.  In Act Three, the government must meet the daunting compelling-interest and least-restrictive-means test.

*Cavin v. Mich. Dep't of Corrections*, 927 F.3d 455, 458 (6th Cir. 2019) (quotation marks and citations omitted).  A "government" is defined as:

   (i)     a State, county, municipality, or other governmental entity created under authority of a State;

   (ii)    any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and

   (iii)   any other person acting under color of State law."

42 U.S.C. § 2000cc-5(4).

#### 2. Application

As both the MDOC and the Gateway Defendants note, money damages are unavailable under RLUIPA against defendants sued in their individual or official capacities.  *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014).  As such, these

claims should be dismissed.[9]  Additionally, Salami has failed to show that the

Gateway Defendants were acting under color of State law, or that she has

exhausted administrative remedies as to the MDOC Defendants.  *Coleman v.*

*Washington*, No. 18-13171, 2020 WL 4932110, at *2 (E.D. Mich. Aug. 24, 2020)

("The PLRA does not have an exception for RLUIPA claims, and its exhaustion

requirement is mandatory and applies to all suits regarding prison conditions,

regardless of the nature of the wrong or the type of relief sought." (internal

quotation omitted)).  For these reasons, Salami's claims under RLUIPA are subject

to dismissal.

## V.  Conclusion

Accordingly, for the reasons stated above, the undersigned

**RECOMMENDS** that the MDOC Defendants' renewed motion to dismiss and/or

for summary judgment (ECF No. 88) and the Gateway Defendants' motion to

dismiss (ECF No. 90) be **GRANTED**, and that this case be **DISMISSED**.

Dated: February 18, 2021                    s/Kimberly G. Altman
Detroit, Michigan                           KIMBERLY G. ALTMAN
                                            United States Magistrate Judge

---

[9] The Gateway Defendants also state that Salami has been transferred to a new facility, rendering her claims for injunctive and declaratory relief moot.  *See Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996) (holding prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility).  Salami has not informed the Court that she is at a different facility, as she is obligated to do so.  If Salami is no longer at Carson City, the claims would be moot.

20

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 18, 2021.

<div style="margin-left:40%">

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager

</div>